**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

JENNIFER ANN SISLER, )
                       )
                Plaintiff, )
                       )
            v. )      Case No. 4:24-cv-00778-RK
                       )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION, )
                       )
              Defendant. )

## ORDER

Before the Court is Plaintiff Jennifer Ann Sisler's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **REVERSED and REMANDED** for a supplemental administrative hearing followed by a new written decision.

## Background

Plaintiff filed a protective application under Title XVI of the Social Security Act for supplemental security income alleging disability beginning on June 21, 2022. (Tr. at 13.) After Plaintiff's application was denied at both the initial and reconsideration levels, Plaintiff requested a hearing before an ALJ. Following a hearing, (Tr. at 31-72), the ALJ issued an unfavorable decision, (Tr. at 13-30). The Appeals Council denied Plaintiff's subsequent request for review, (Tr. at 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff accordingly seeks judicial review of the ALJ's unfavorable decision denying her application for supplemental security income under the Social Security Act.

## Discussion

The Court's review of the ALJ's decision denying Plaintiff's application for supplemental security income benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is

supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

## I. The Five Step Sequential Analysis for Disability Benefits

To determine whether a claimant is entitled to SSI benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. § 416.920(a)(4), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work

---

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by an claimant's impairment(s) and related symptoms. 20 C.F.R. § 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is

2

considering the claimant's RFC as assessed by the ALJ.  In doing so, the ALJ is required to consider the persuasiveness of  medical opinions and prior administrative medical findings.  *See* 20 C.F.R. § 419.920c.  If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits.  However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's RFC, alongside their age, education, and work experience, and the corresponding testimony of a vocational expert.  If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

## II.    The ALJ's Mental RFC Assessment

At the initial steps of the disability analysis framework, the ALJ found, *inter alia*, that Plaintiff suffers from severe mental impairments of major depression disorder, bipolar II disorder, and generalized anxiety disorder.  (Tr. at 15.)  In assessing Plaintiff's mental RFC at Step Four of the disability benefits analysis, the ALJ considered the relevant prior administrative findings and opinions of two state agency psychological consultants (Dr. Barbara Markway and Dr. Mark Altomari) and the consultative psychological examiner (Nina Epperson, M.S.)

At the earlier state agency administrative review stage of Plaintiff's disability benefits application process, both state agency psychological consultant, Dr. Markway and Dr. Altomari, found that Plaintiff had moderate limitations in several areas of mental functioning.  Specifically, Dr. Markway and Dr. Altomari opined that Plaintiff had limitations in the areas of: (1) understanding and memory (specifically, Plaintiff's ability to understand and remember detailed instructions); (2) concentration and persistence (specifically, Plaintiff's ability to carry out detailed instructions and to maintain attention and concentration for extended periods); (3) social interaction (specifically, Plaintiff's ability to interact appropriately with the general public); and (4) adaptation (specifically, Plaintiff's ability to respond appropriately to changes in the workplace setting).  (Tr. at 85-86, 96-97.)  Consistent with Plaintiff's limitations in these areas of functioning, Dr. Markway and Dr. Altomari each opined that Plaintiff would be limited as follows:

(1) "[s]he can understand, remember and carry out a two-step command involving simple instructions" (understanding and memory);

---

ultimately an administrative determination" for the ALJ.  *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

(2) "[s]he retains sufficient mental capacity to carry out two-step commands with adequate persistence and pace; but she would struggle with detailed or complex instructions" (concentration and persistence);

(3) "[s]he would function best in a setting where there is little need for direct supervision or frequent interactions with coworkers and members of the public" (social interaction); and

(4) "[s]he is capable of adapting to changes which are predictable and introduced gradually" (adaptation). (Tr. at 85-86; *see* Tr. at 96-97.)

The psychological consultative examiner, Nina Epperson, M.S., similarly opined that Plaintiff:

(1) "is able to understand and remember simple, one to two step instructions and appears capable of following through" (understanding and memory);

(2) has a "mildly impaired" ability to concentrate and would "likely . . . be able to focus on simple and routine task[s] and would be able to follow through and maintain pace" (concentration, persistence and pace);

(3) "is able to interact most effectively on a one to one basis" and "would be best suited in employment situations that allowed her to work alone or in a small group" (social interaction); and

(4) "is likely to have difficulty adapting to new situations and would benefit from structure" (adaptation). (Tr. at 464.)

The ALJ found all three opinions to be persuasive except as to the opinion that Plaintiff "is limited to one to two step commands." (Tr. at 22-23.) As to this opinion, the ALJ found that many of the activities of daily living Plaintiff reported as being able to do "are . . . tasks that generally require more than one to two steps," such as living alone, preparing meals, driving, and cleaning and doing laundry. (Tr. at 23.)[2] In other words, the ALJ found that Plaintiff is capable of completing tasks requiring more than 1-2 step instructions. Ultimately, the ALJ assessed Plaintiff's mental RFC, in full, as follows:

> [Plaintiff] is able to perform simple, routine, and repetitive tasks, but not at a production rate pace. [Plaintiff] is able to interact with supervisors occasionally, interact with co-workers occasionally, and interact with the public occasionally.

---

[2] The ALJ also found unpersuasive M.S. Epperson's opinion that Plaintiff was limited to working alone or in small groups, similarly considering Plaintiff's activities of daily living (such as shopping in stores) and her normal mood and behavior on examination. (Tr. at 23.)

> With regard to dealing with changes in work setting, [Plaintiff] is able to make simple work-related decisions.

(Tr. at 19.)

### III. Plaintiff's Arguments Challenging the Mental RFC

On appeal, Plaintiff asserts several arguments challenging the ALJ's mental RFC determination. First, she argues that the ALJ failed to comply with 20 C.F.R. § 416.920c in evaluating the persuasiveness of the three expert opinions. Second, Plaintiff argues that the ALJ failed to comply with Social Security Ruling 96-8p in assessing the opinions of Dr. Markway and Dr. Altomari and formulating the mental RFC. Third, and finally, Plaintiff argues that the ALJ's finding that the opinions were unpersuasive as to a limitation to 1-2 step instructions is not supported by substantial evidence.

### A. Title 20 C.F.R. § 416.920c—Persuasiveness Determination (Consistency and Supportability)

Plaintiff first argues that the ALJ erred as a matter of law because he did not fully consider both the supportability and consistency of the three expert opinions as required by § 416.920c. Under § 416.920c(a), the ALJ must "evaluate the persuasiveness" of each medical opinion or prior administrative medical finding and cannot "defer or give any specific evidentiary weight" to any particular opinion or prior finding. To evaluate the persuasiveness of the expert opinions or findings, the ALJ must consider—and must "explain how [he] considered"—two factors (supportability and consistency) and may consider other factors. § 416.920c(b)(2).

In this context, supportability refers to how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s)." § 416.920c(c)(1). Consistency refers to how consistent the subject medical opinion is with "evidence from other medical sources and nonmedical sources in the claim." § 416.920c(c)(2). An ALJ's failure to articulate and explain how both supportability and consistency were considered in evaluating medical opinion evidence at the RFC-assessment stage is reversible legal error. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (citing *Lucus vSaul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020)). While an ALJ's "failure to follow the procedures prescribed" in the relevant regulations is reversible legal error, a "mere drafting oversight" is not. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003).

### 1.    Dr. Markway and Dr. Altomari

The Court finds that the ALJ properly considered both supportability and consistency of the opinions of the two state agency psychological consultants, Dr. Markway and Dr. Altomari. Both state agency consultants found that Plaintiff was limited in her understanding and memory (i.e., that Plaintiff was capable of understanding, remembering, and carrying out a "two-step command involving simple instructions"); concentration and persistence (i.e., that Plaintiff has "sufficient mental capacity to carry out two-step commands" but that "she would struggle with detailed or complex instructions"); social interaction (i.e., as having "little need for direct supervision or frequent interactions with coworkers and members of the public"); and adaptation (i.e., that Plaintiff "is capable of adapting to changes which are predictable and introduced gradually").  The ALJ found Dr. Markway and Dr. Altomari's opinions persuasive *except* for their opinions that Plaintiff was limited to 1-2 step instructions.

In finding the state agency consultant's opinion to be unpersuasive in this regard, the ALJ noted (1) Plaintiff's activities of daily living as reflected in the function report[3] and (2) the findings and opinions in the consultative examination report by M.S. Epperson, both of which were included in the administrative record as reviewed by Dr. Markway and Dr. Altomari.  (Tr. at 23.)  In the decision, the ALJ referred to M.S. Epperson's consultative examination report as, in the ALJ's view, including "testing that demonstrates the claimant has no impairment in functional or cognitive status, mild impairment with concentration, and normal thought, long term memory, calculation, judgment, and insight."  (*Id.*)  The ALJ cited the "mental status examination" section of M.S. Epperson's report, noting M.S. Epperson's clinical findings, including:

> **Insight and Judgment**: The claimant presented with insight into her mental health issues and her judgment is intact.
>
> **Sensorium/Cognition**: Ms. Sisler was alert and oriented to all spheres.  She was able to repeat after the examiner 3 of 3 unrelated objects immediately and recalled 2 of 3 after a five-minute interval.  Overall, memory functions are considered intact. She was unable to perform Serial 7's and unable to perform Serial 3's. she was able to spell the word "World" forward and backward.  The claimant demonstrated a mild impairment with concentration and is easily distracted.  The claimant's general fund of knowledge was average.  The claimant was able to adequately interpret

---

[3] The reconsideration decision appears to reference a second function report submitted by Plaintiff dated March 3, 2023, (Tr. at 91), that would have been submitted after the initial determination dated February 8, 2023.  Neither the ALJ's decision nor the administrative record appears to reference or include a second function report submitted by Plaintiff.

proverbs and her responses to the questions of similarity indicate the use of abstract reasoning abilities. The claimant was able to perform simple mathematical calculations without paper and pencil. Overall, Ms. Sisler appears to function in the average range of intelligence.

(TR. at 464.)

The ALJ reasoned that both Plaintiff's daily living activities and the clinical findings within M.S. Epperson's consultative examination report support the ALJ's conclusion that Plaintiff "is able to perform simple, routine, and repetitive tasks, but not at a production rate pace," and therefore finding that Dr. Markway and Dr. Altomari's opinions limiting Plaintiff to 1-2 step instructions was not persuasive. (*Id.*) In short, the Court is persuaded that the ALJ properly considered both the supportability and consistency of Dr. Markway and Dr. Altomari's opinions.

### 2. M.S. Epperson

In separately evaluating the persuasiveness of M.S. Epperson's opinion, the ALJ found it "persuasive to the extent that it opines the claimant is able to focus on simple and routine tasks and is likely to have difficulty adapting to new situations" but was "not persuasive" to the extent "the claimant is able to understand and remember simple, one to two step instructions." (Tr. at 23.) The ALJ reasoned:

[Claimant] is able to live alone, shop, clean, do laundry, prepare meals, and drive; these are all tasks that generally require more than one to two steps. As previously mentioned, this limitation was raised by the claimant's representative at the hearing, and the undersigned finds the claimant is able to perform simple, routine, and repetitive tasks, but not at a production rate pace. . . .

(*Id.*)

The Court finds that the ALJ properly considered both consistency and supportability of M.S. Epperson's opinion. As to consistency, the ALJ considered other nonmedical evidence in the record, namely Plaintiff's activities of daily living as reflected in both the hearing testimony and the function report. Moreover, the ALJ specifically referenced the preceding discussion of the persuasiveness of Dr. Markway and Dr. Altomari's opinions as to the same one-to-two-step-instruction limitation, wherein the ALJ noted that the conclusion that Plaintiff "is able to perform simple, routine, and repetitive tasks, but not at a production rate pace" without a limitation to one-to-two-step instructions "is consistent with" M.S. Epperson's clinical findings. To the extent the ALJ did not more explicitly reiterate or re-incorporate M.S. Epperson's clinical findings in the paragraph discussing the persuasiveness of M.S. Epperson's opinions, Plaintiff identifies no more than "an arguable deficiency in opinion-writing technique." *Hepp v. Astrue*, 511 F.3d 798, 806

7

(8th Cir. 2008) (internal quotation marks omitted). However, as explained above, the Court is persuaded that the ALJ properly and adequately considered both the supportability and consistency factors as to M.S. Epperson's opinions.

### B. Social Security Ruling 96-8p

Plaintiff's second argument is more persuasive, at least in part. Social Security Ruling 96-8p requires that when the ALJ's RFC assessment "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." 1996 WL 374184, at *7. Put another way, "[w]hen an ALJ finds a medical opinion persuasive . . . any limitations in the medical opinion should [generally] be included in the ALJ's RFC." *Batson v. Kijakazi*, No. 20-03251-CV-S-WBG, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022). Failure to do so—or the ALJ's failure to explain why the limitation was not included—is reversible error for lack of substantial evidence supporting the ALJ's RFC assessment. *See Richardson v. Colvin*, No. 5:16-06148-CV-RK, 2017 WL 6420283, at *2 (W.D. Mo. Dec. 18, 2017) (finding that remand was required where "the ALJ failed to include or explain the omission of Dr. Pattison's remaining limitations in his medical opinion [that the ALJ did not discount but found was persuasive]"); *see also Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (an ALJ must "set forth specifically a claimant's limitations and . . . how those limitations affect her RFC").

Plaintiff argues that the ALJ failed to comply with SSR 96-8p here because the RFC as assessed is inconsistent with several moderate limitations found by Dr. Markway and Dr. Altomari in several areas of Plaintiff's mental functioning, which the ALJ found persuasive: understanding and memory (that Plaintiff would be limited to "simple" instructions); concentration and persistence (i.e., that Plaintiff would "struggle with detailed or complex instructions"); and adaptation (i.e., that Plaintiff could adapt "to changes which are predictable and introduced gradually").[4]

The Court is somewhat persuaded that the ALJ properly and adequately accounted for the moderate limitations in the two functional areas of (1) understanding and memory, and (2) concentration and persistence, both related to the complexity of instructions. The RFC limits Plaintiff to "simple, routine, and repetitive tasks." In *Howard v. Massanari*, 255 F.3d 577 (8th Cir.

---

[4] As set out above, the ALJ only found the expert opinions unpersuasive solely as to the opinion that Plaintiff was limited to 1-2 step instructions. The necessary implication is that the ALJ otherwise found the expert opinions persuasive. The Commissioner does not present any argument to the contrary.

8

2001), the Eighth Circuit considered whether there was a conflict between an expert opinion that Howard, in part, "was 'capable of performing simple instructions and procedures despite borderline to deficient attention/concentration and borderline IQ," and the ALJ's RFC assessment that included that "the claimant is only capable of performing simple, routine, repetitive work." *Id.* at 579, 580. On appeal, Howard argued that the deficiencies of concentration, persistence or pace were not adequately presented to the vocational expert at Step Five of the sequential analysis, in that the ALJ asked the vocational expert "to assume that Howard would be capable of performing simple, routine, repetitive tasks." *Id.* at 582. The Eighth Circuit found that there was no conflict, finding that "the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures Howard's deficiencies in concentration, persistence, and pace," i.e., that Howard was "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function." *Id.*; *see also Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) (recognizing there is "no direct conflict" between an RFC limitation to "carrying out simple job instructions for simple, routine and repetitive work activity" and a vocational expert's testimony that Galloway could perform jobs "involving instructions that, while potentially detailed, are not complicated or intricate") (internal quotation marks omitted).

Nonetheless, the Court need not decide this issue, either, because the Court is more persuaded that the RFC failed to properly account for Plaintiff's limitation in adapting to changes in the workplace, a limitation which the experts similarly opined and which the ALJ found persuasive. Dr. Markway and Dr. Altomari opined that Plaintiff could adapt to "changes which are predictable and introduced gradually."[5] As noted above, the ALJ found these opinions to be persuasive. Indeed, in the written decision, the ALJ noted, similarly, "[b]ecause of her mental impairments, the claimant is . . . limited to changes in daily duties-- . . . as further described in the residual functional capacity." (Tr. at 22.) However, in setting forth the RFC, the ALJ assessed Plaintiff's mental RFC as:

> The claimant is able to perform simple, routine, and repetitive tasks, but not at a production rate pace. The claimant is able to interact with supervisors occasionally, interact with co-workers occasionally, and interact with the public occasionally.

---

[5] The Court notes that M.S. Epperson similarly opined that Plaintiff "is likely to have difficulty adapting to new situations and would benefit from structure." (Tr. at 464.) The ALJ specifically found this opinion by M.S. Epperson to be persuasive. (Tr. at 23.)

> With regard to dealing with changes in work setting, the claimant is able to make simple work-related decisions.

(Tr. at 19.) The ALJ reiterated this same formulation in the hypotheticals presented to the vocational expert. (Tr. at 60, 61.)

Most likely, it appears that the ALJ simply erred in formulating the RFC. In the written text of the RFC discussion, the ALJ expressly stated that he intended to limit Plaintiff to "limited changes in daily duties." (Tr. at 22 (explaining that, "[b]ecause of her mental impairments, the claimant is limited to simple, routine, and repetitive tasks, with limited social interaction, and limited changes in daily duties—all as further described in the residual functional capacity").) However, neither the RFC formulation nor the ALJ's hypotheticals to the vocational expert properly accounted for any similar limitation to "limited changes in daily duties." The Commissioner suggests in a single statement, without any supporting analysis or legal authority, that the ALJ accounted for Plaintiff's moderate limitation in adaptation (regarding changes in the workplace) by limiting Plaintiff to "making only simple work-related decisions related to workplace changes." The ability to make simple work-related decisions, however, is a different area of mental functioning (judgment) than an ability to deal with changes in the workplace (adaptation). *McGehee v. Saul*, No. 18-1164 KK, 2019 WL 6219507, at *10 (D.N.M. Nov. 21, 2019) (recognizing that "a restriction to 'simple work-related decisions'—which is associated with the ability to exercise judgment—does not account for a limitation in the ability to appropriately respond to changes in the workplace, which is associated with a different of the four basic mental demands") (citing POMS § DI 25020.010B.2.b and POMS § 25020.01B.2.d). Neither does the ALJ's limitation to simple, routine, and repetitive tasks appear to account for Plaintiff's moderate limitation in adaptation regarding workplace changes (which the ALJ found persuasive). *Jennifer v. Kijakazi*, No. 22-cv-700 (NEB/DTS), 2023 WL 3998033, at *4-5 (E.D. Mo. May 26, 2023) (recognizing that limitation to "simple, routine, repetitive task[s]" are generally "related to the concentrate, persist, and maintain pace, area of function" while "a limitation to few if any work place changes deals largely with workplace adaptation, rather than concentration, pace, or persistence") (internal quotation marks omitted; quotation modified) (collecting cases). The Commissioner simply glosses over these distinctions and does not provide any cogent and helpful analysis.

If the ALJ intended the limitation to "simple work-related decisions as to workplace changes" to account for Plaintiff's adaptation limitation (i.e., to predictable and gradually

10

Case 4:24-cv-00778-RK    Document 14    Filed 03/31/26    Page 10 of 13

introduced changes, which the ALJ found persuasive), on this record and without any logical bridge between the RFC limitation and the nature Plaintiff's adaptation limitation opined by Dr. Markway and Dr. Altomari (as well as M.S. Epperson), the Court is unable to say whether the ALJ's RFC assessment is supported by substantial evidence. If the ALJ merely omitted from the RFC the intended limitation that Plaintiff have "limited changes in daily duties," the Court cannot say (and the Commissioner does not argue) that the oversight is harmless error. In short, the lack of clarity simply does not allow for adequate review and makes it impossible for the Court to consider whether the ALJ's RFC assessment, and the subsequent findings under the disability benefits analysis, are supported by substantial evidence. *See Hardy v. Dudek*, No. 4:24-cv-0171-MTS, 2025 WL 917222, at *7 (E.D. Mo. Mar. 26, 2025); *Thurman v. Colvin*, No. 2:12-CV-2138, 2013 WL 2385231, at *4 (W.D. Ark. May 30, 2013).

Because the Court finds the ALJ failed to comply with SSR 96-8p, the ALJ's decision is reversed, and the case is remanded for a supplemental administrative hearing followed by a new written decision.

### C.     Substantial Evidence

As noted above, Plaintiff also raises a substantial evidence challenge to the ALJ's decision finding the expert opinions unpersuasive as to a 1-2 step instruction limitation. Specifically, Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living in making this determination. She argues that relying on Plaintiff's activities of daily living is not substantial evidence to support the ALJ's determination that this opinion by the experts was unpersuasive because doing so either (1) improperly substitutes the ALJ's opinion for the expert opinions, or (2) fails to consider the episodic nature of mental illness and its symptoms and that these activities are not performed with the same vigor or structure that is required of an employee in the workplace. The Court is not persuaded. *See Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016) (finding "other evidence in the record also supports the ALJ's decision not to accord Dr. Robinette's opinion controlling weight," namely that "Reece's daily activities are not indicative of someone who is completely unable to work").

First, the Court notes that in making this determination, the ALJ relied on both Plaintiff's activities of daily living and M.S. Epperson's clinical findings (at least in evaluating the persuasiveness of Dr. Markway and Dr. Altomari's opinions, if not M.S. Epperson's opinion as well) for the limited or targeted finding that the 1-2 step instruction limitation was not persuasive.

This case is thus distinguishable from *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000), as cited by Plaintiff. In *Singh*, the Eighth Circuit found that the "ALJ failed to properly credit Singh's subjective complaints of pain, all of which were consistent with the objective medical evidence." *Id.* at 452. Moreover, the Eighth Circuit found that "Singh's testimony regarding his daily activities—staying around the house, watching T.V., needing help to shave, being unable to sit through an entire movie—are all consistent with his complaints of disabling pain." *Id.* 453. Here, though, Plaintiff's activities of daily living as found by the ALJ do appear to be inconsistent with a 1-2 step instruction limitation.

Second, contrary to Plaintiff's argument, the ALJ did acknowledge Plaintiff's testimony that she has "good days" and "bad days" but found good reasons to discount this testimony. Specifically, the ALJ also noted Plaintiff's testimony that she no longer attended therapy because she had "progressed in life" and that Plaintiff's treatment records demonstrate she is relatively stable and doing well on her psychiatric medications in addition to reflecting routinely normal clinical findings and unremarkable mood, cooperation, and functional or cognitive status. (Tr. 21-22.) The ALJ properly discounted Plaintiff's subjective complaints and considered the persuasiveness of the relevant medical opinions or prior administrative findings concerning any limitation to 1-2 step instructions in light of Plaintiff's activities of daily living that require more than two steps. *See Alicia G. v. O'Malley*, No. 22-cv-02268-TC, 2024 WL 53105, at \*6 (D. Kan. Jan. 4, 2024) (finding that "it is plausible that Plaintiff's activities [of daily living] are inconsistent with a limitation to one and two step instructions"). In short, the Court is persuaded the ALJ's determination appears to fall within the "zone of choice" and is thus supported by substantial evidence. *Cropper*, 136 F.4th at 815.

## IV. Plaintiff's Other Arguments on Appeal

Plaintiff raises several other arguments on appeal. She argues that the ALJ's physical RFC is not supported by substantial evidence because the ALJ stated that "some additional postural and environmental limitations" were assessed "to account for some of the claimant's alleged symptoms" but did not include any such postural or environmental limitations in the RFC assessment. She also argues that the ALJ improperly relied on the purported lack of treatment without complying with SSR 16-3p when the ALJ "did not inquire of Plaintiff as to why she missed some appointments," and where there is "no . . . evidence Plaintiff would be restored to work had she not missed a few appointments." Finally, she asserts that the ALJ erred at Step Four by finding

that Plaintiff could perform past relevant work as a housekeeper cleaner (DOT 323.687-014), which does not constitute past relevant work under the applicable "substantial gainful activity level" requirement established under 20 C.F.R. § 416.965. Because the Court remands the case for a new written decision following a supplemental administrative hearing, the Court leaves it to the ALJ to address these issues on remand as may be necessary.

### Conclusion

Accordingly, after careful consideration and review, the Court **ORDERS** that the ALJ's decision is **REVERSED and REMANDED** for a supplemental administrative hearing followed by a new written decision.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 31, 2026

13